March 15, 1979

## 79-17  MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, CIVIL RIGHTS DIVISION

### Civil Rights—Busing—Effects of Eagleton-Biden Amendments (92 Stat. 1586)—Department of Justice Use of Personnel and Resources of the Department of Health, Education, and Welfare in Desegregation Litigation

This responds to your memorandum of December 13, 1978, concerning the applicability of the Eagleton-Biden Amendment to use by the Civil Rights Division of employees and other resources of the Department of Health, Education, and Welfare (HEW).

### I. Background; Summary

A. The Eagleton-Biden Amendment is § 209 of the Department of Health, Education, and Welfare Appropriation Act for Fiscal Year 1979, Pub. L. No. 95–480, 92 Stat. 1586 (1978). Section 209 reads as follows:

> None of the funds contained in this Act shall be used to require, directly or indirectly, the transportation of any student to a school other than the school which is nearest the student's home, except for a student requiring special education, to the school offering such special education, in order to comply with title VI of the Civil Rights Act of 1964. For the purpose of this section an indirect requirement of transportation of students includes the transportation of students to carry out a plan involving the reorganization of the grade structure of schools, the pairing of schools, or the clustering of schools, or any combination of grade restructuring, pairing, or clustering. The prohibition described in this section does not include the establishment of magnet schools.

An essentially identical provision was contained in the HEW appropriation

act for fiscal year 1978,[1] and similar provisions were included in the appropriation acts for the previous 3 years.

Your memorandum states that HEW wishes to refer to the Civil Rights Division, for the bringing of a lawsuit to enforce Title VI of the Civil Rights Act of 1964, the matter of the desegregation of the Chicago public schools. According to your memorandum, a suit against the Chicago school system would considerably overtax the resources of this Department, and HEW has offered to provide the resources needed for the suit. In light of the fact that any appropriate remedy would, it appears, certainly require transporting some students beyond their nearest schools, you have raised a number of questions concerning the ability of this Department to use HEW resources.

B. The basic issue is whether § 209 applies at all to the conduct of such litigation. Although the question, which is essentially one of statutory construction, may be thought by some not to be free from doubt, in our opinion, the statute was not intended to bar HEW's cooperation with this Department. Our view, as explained below, is that § 209 restricts only HEW's conduct of administrative fund-termination proceedings and that it does not limit the use of HEW funds to support a lawsuit brought by this Department.

At the outset, however, we should note that there are other limits upon the ability of the Department of Justice to use the resources of other agencies. Provisions in Titles 5 and 28 of the United States Code assign to this Department general responsibility for conducting litigation involving Federal agencies. With regard to the role of HEW attorneys in title VI litigation, those provisions must be considered. Also, quite apart from § 209, HEW funds must be used in a manner consistent with the HEW appropriation statute. Within the limits of these several statutes, we believe that it would be permissible for this Department to make substantial use of HEW employees and resources in connection with title VI litigation, including school desegregation cases that may result in student-transportation orders.

## II. Discussion

### A. The Meaning of the Eagleton-Biden Amendment

As your memorandum indicates, the language of § 209 may be interpreted in various ways. The statutory interpretation that would bar HEW's cooperation can be simply stated: the work of Government attorneys in preparing or bringing a desegregation suit in which the remedy is likely to involve busing is "indirectly requiring" the transportation of students beyond their nearest schools. Yet, the language of the statute does not readily lend itself to that construction. Moreover, that construction is not supported by the legislative history. The history of § 209 makes clear that Congress intended to bar use of HEW fund-termination

---

[1] *See* § 208 of Pub. L. No. 95–205, 91 Stat. 1460 (1977).

proceedings as means of requiring busing. It also makes clear that Congress did not intend to interfere either with the ability of HEW to refer such cases to the Department of Justice or with the manner in which this Department conducts the litigation of those cases. For example, in opposing Senator Brooke's amendment to delete § 209, Senator Eagleton referred to HEW's administrative proceeding against the school system of Kansas City, Missouri, as "the kind of situation the Eagleton-Biden amendment is designed to prevent."[2] Then he added: "The amendment puts HEW on notice that if they want busing in a school district, they are going to have to get it through the Federal courts." The same basic view that § 209 applies only to "administrative busing" ordered by HEW was made by Senator Biden.[3]

Our review of the legislative history reveals no discussion of the question whether HEW personnel can assist the Department of Justice in preparing or bringing a title VI-based lawsuit for desegregation of a school system. In our opinion, such assistance is not contrary to the purpose of § 209. The legislative history shows that Congress opposed requiring busing in the context of HEW administrative proceedings. When a matter is referred to the Department of Justice, the context becomes a judicial proceeding and the Government's position is controlled by this Department. There is no reason to read § 209 as barring HEW from assisting this Department, even with regard to the student-assignment or busing aspects of a lawsuit. The crucial point is that, if a busing requirement results from litigation, the basis will be a court order or a negotiated settlement, not the threat of fund termination.

Our view is supported by the fact that Congress was fully aware of the decision regarding the constitutionality of the virtually identical fiscal year 1978 version of the Eagleton-Biden Amendment. *Brown* v. *Califano,* 455 F. Supp. 837 (D.D.C. 1978).[4] In rejecting the plaintiff's view that the provision was unconstitutional on its face, the District Court stressed the fact that HEW could enforce title VI by referring matters to this Department. In its conclusion, the court stated the following:[5]

> Should further proceedings in this case reveal that the litigation option left undisturbed by these provisions cannot, *or will not,* be made into a workable instrument for effecting equal educational opportunities, the Court will entertain a renewed challenge by plaintiffs on an *as applied basis* * * *. [Emphasis in original.]

An interpretation of § 209 that would prohibit or severely restrict HEW

---

[2] 124 CONG. REC. S16302 (daily ed., Sept. 27, 1978).
[3] 124 CONG. REC. S16303 (daily ed., Sept. 27, 1978).
[4] Senator Biden placed the court's decision in the CONGRESSIONAL RECORD. He and Senators Eagleton and Brooke referred to the decision during the Senate debate on the amendment to delete § 209. 124 CONG. REC. S16298 (Senator Brooke), S16302 (Senator Eagleton), and S16303–305 (Senator Biden) (daily ed., Sept. 27, 1978).
[5] 455 F. Supp. at 843.

assistance to this Department in regard to referred cases might make application of the legislation more vulnerable to attack. This is a further reason for concluding that the proponents of § 209 did not intend such an interpretation.

In sum, it appears to us plain that Congress intended to leave untouched this Department's litigation authority in these cases. It must likewise be concluded that, had Congress intended to effect a significant alteration in the usual relationship between this Department and HEW in the handling of that litigation, its intent would have been clearly spelled out. We have found no evidence in the legislative consideration of HEW's appropriation for fiscal year 1979 to suggest a congressional intent to curtail HEW's usual role of providing assistance in these cases. With that conclusion in mind, we will turn to a review of the statutory limitations ordinarily impinging upon interagency cooperation in litigation.

### B. Limits Upon Department of Justice Use of HEW Resources

A primary purpose for creating the Department of Justice was to centralize control of litigation involving the United States or a Federal agency. This is reflected in 28 U.S.C. § 516, which reads as follows:

Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party * * *, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

A parallel section, 5 U.S.C. § 3106, provides that, except as otherwise authorized by law, an executive department "may not employ an attorney * * * for the conduct of [such] litigation * * * or for the securing of evidence therefor, but shall refer the matter to the Department of Justice."

As a practical matter, cooperation between attorneys of this Department and agency attorneys is necessary.[6] So long as this Department retains control over the conduct of the litigation, even an extensive role for attorneys of other agencies seems consistent with the purposes of 28 U.S.C. § 516 and 5 U.S.C. § 3106. The large number of agreements between this Department and our "client" agencies (most of which are summarized in the Civil Division's Practice Manual) attests to the importance of cooperation.

A related question is allocation, between this Department and an agency involved in a civil suit, of the expense of litigation. Clearly, when one department is given sole responsibility for a type of activity, the appropriation of another department may not properly be used to cover the cost of that activity. *See* 31 U.S.C. § 628. With respect to litigation, however, the

---

[6] As you probably know, litigation management is the subject of a study by the President's Reorganization Project.

authority of this Department has never been read as ousting other agencies from performing a supporting role. Given this long history, and given the necessity of cooperation, we think it may be assumed that, ordinarily, when Congress appropriates funds for an agency general counsel's office, Congress intends a portion of such funds to be used to carry out the agency's functions concerning litigation.

We are not suggesting that this Department could adopt a practice of charging other agencies, such as HEW, for the cost of bringing lawsuits. Our point is that, in general, the other agencies have the responsibility of assisting this Department and that agency appropriations may properly be used for that purpose. *Cf.* 39 Comp. Gen. 643, 646–47 (1960). Regarding the present matter, we believe that there is broad latitude regarding the amount and types of assistance that HEW may provide to this Department.

HEW attorneys and supporting personnel may properly provide factual material and may also draft interrogatories, pleadings, briefs, and other papers. HEW employees, whose salaries are paid by HEW, may be detailed to this Department to work on such matters. An HEW attorney, who has been designated as a special attorney under 28 U.S.C. § 543 or § 515(a), may take part in judicial proceedings.

As a matter of policy, in view of the possibility that the Eagleton-Biden Amendment may be susceptible to a more prohibitive interpretation, you may wish to consider whether it might be advisable to limit the role of HEW employees with respect to the busing-related aspects of a case. That is, regarding those issues, an HEW attorney detailed to this Department might refrain from assuming the lead role in conducting negotiations or litigation. The likelihood of successfully defeating a claim of violation of § 209 would be enhanced if the busing-related aspects of the case were clearly controlled by a Department of Justice employee.

With regard to use of HEW computer programmers and computer time, there should be much leeway. This kind of support would seem to be a proper use of HEW's appropriation.

There have been situations in which HEW has paid the travel expenses of Department of Justice employees. Ordinarily, however, this type of expense is paid from the appropriation of this Department. The propriety of accepting travel funds from HEW might well depend upon the particular circumstances (*e.g.,* whether the travel is for an investigation or for trial). For example, when HEW makes a referral, it is responsible for performing at least a preliminary investigation. Thus, if a Department of Justice employee were to assist HEW in conducting an HEW investigation, it would seem proper for HEW to pay his or her expenses and even his or her salary. In other words, HEW would be purchasing services from this Department. *See* § 601 of the Economy Act, 31 U.S.C. § 686.

Your memorandum describes three hypothetical situations and raises a number of questions with regard to each of them. Our views on most of these questions are indicated by the general guidelines set forth above, but we will respond briefly to the specific issues.

(A) HEW employees, paid by HEW, could properly be detailed to your Education Section and could work on cases involving Eagleton-Biden questions, *i.e.,* busing. An HEW attorney could properly work, in a subsidiary role, on any aspect of such cases. As a policy matter, as noted above, we question whether an HEW employee should be the lead attorney regarding Eagleton-Biden issues.

A detailed HEW employee could work on cases not involving busing, assuming the case is related to the responsibilities of HEW.[7]

Because of our construction of § 209, our views do not depend upon the statutory basis of the case (title IV, title VI, etc.) or the timing of a referral by HEW.

(B) HEW employees, paid by HEW, could properly be detailed to a Civil Rights division Section other than the Education Section. Their work would not have to relate to title VI, if it related to some other responsibility of HEW.[8]

You ask whether this Department could properly "demand," as a condition for accepting a referral of the Chicago case, that HEW detail a number of employees to the Civil Rights Division. This question is more difficult, and the answer would seem to depend upon the particular facts. Regarding this kind of litigation, there is no precise dividing line between the responsibilities of this Department and of the other agency. We can properly insist that the other agency cooperate and provide substantial assistance. Still, basic responsibility for conducting the litigation and bearing its expense belongs to this Department. If our funds are not adequate to permit the bringing of a large-scale suit, we would ordinarily consider seeking an additional appropriation. While a greater amount of interim, or short-term, assistance might be appropriate in particular cases, there is probably a point at which HEW's assistance would constitute a circumvention on this Department's appropriation limitations.

Obviously, it is difficult to identify the proper line beyond which this Department should not go in demanding assistance from "client" agencies. If HEW is unable or unwilling to provide sufficient assistance, we would be pleased to consider the matter further in light of the specific circumstances.

## Case 2: Use, Within HEW, of HEW Resources

(A)–(C) HEW personnel and resources could properly be

---

[7] Clearly, a suit involving higher education or sex discrimination in education would relate to the statutory responsibilities of HEW. A more general—but probably valid—basis for detailing HEW employees would be training, *i.e.,* the benefits of learning techniques of investigating and litigating civil rights cases.

[8] *See* footnote 7, *supra.*

used, within HEW, to assemble material regarding any aspect of a potential school-desegregation case. Such work could be done before or after a referral of the matter to this Department.

(D) Our opinion is the same with regard to preparing litigation material, such as pleadings and exhibits. Of course, material of this type would be subject to review by Department of Justice attorneys.

### Case 3: Expert Witnesses

We do not construe § 209 as limiting in any way this Department's use of expert witnesses. For example, an expert who is an HEW employee could properly express views concerning student assignment practices and necessary remedies, including busing. In our opinion, such statements would not amount to "indirectly requiring" busing.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*